IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:22-cv-890

FILED
JUN 2 1 2023
IN THIS OFFICE
Clerk U.S. District Court
Greensboro
By

RECEIVED
In This Office

JUN 2 1 2023

CLERK U.S. DISTRICT COURT
GREENSBORO, N.C.
737

| | |
|---|---|
| DORETHA B. PERKINS, | ) |
| | ) |
| *Pro Se* Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Dr. Miguel Cardona, Secretary of the | ) |
| U.S. Department of Education, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| Pennsylvania Higher | ) |
| Education Assistance | ) |
| Agency, | ) |
| | ) |
| Defendant | ) |

PLAINTIFF'S RESPONSE TO THE BRIEF IN SUPPORT OF DEFENDANT DR. MIGUEL
CARDONA'S MOTION TO DISMISS

Plaintiff respectfully submits this brief in support of her response to Defendant Dr. Miguel Cardona, Secretary of the U.S. Department of Education's Motion to Dismiss.

## I.     Nature of the Matter Before the Court

Ultimately, this is a missing money case.  Defendant Dr. Miguel Cardona, Secretary of the U.S. Department of Education (hereinafter "the Secretary") has argued against the court having jurisdiction over him.  The Plaintiff filed a Complaint against him and the Pennsylvania Higher Education Assistance Agency on September 12, 2022. *See* Docket No. 3, Complaint (hereinafter "Compl.").  The Complaint alleges 22 counts triggered by 21 fraud schemes found in the documents disclosed by the co-defendants.  The Plaintiff tried to follow the money leading to and following PHEAA's consolidation Check 150385 and found no money trail.  The Plaintiff discovered over a thousand missing parts for the subject claim set related to the money trail.  The vital missing parts have been listed in the Complaint and illustrated in the Exhibits attached to the Complaint (hereinafter "Exh." or "Exhs.").  The Plaintiff attached to the Complaint an auditors list (who, what and when), timeline illustrations of schemes with document excerpts (when, what and how often), the co-defendants' reports on the auditors list (what and how), an Abstract of Title detailing the ownership trail (why), instruments disclosed (how), PO Boxes for identifying owners (how), and tables of contradictory statements about activities to show whether the consolidation check in this case was ever honored by a bank (why and how), which will determine whether a consolidation loan was ever made, when, and to whom; whether the claim set is a Law Access claim set; whether the claim set was ever federally insured; whether the Department of Education was authorized to hold a hearing; and the finality of the hearing the Department of Education held.  These allegations establish the essential elements for each count in the Complaint.  The table

1

included in the Motion to Dismiss indicates an ability to determine dates, times and places for liability.

II.     Statement of Facts

In 1995, the Plaintiff attempted to consolidate Law Access double-branded promissory notes and an application/promissory note into one federal financial product. No consolidation completion letter was ever sent. Plaintiff only received one note marked "paid in full", which was not copied for the historical record. The Plaintiff received numerous confusing communications. The co-defendants cannot determine a consolidation completion date from an honored check. No bank or trust has a record of the claim set; or chose PHEAA as a servicer or guarantor of the claim set; or communicated with the Plaintiff or the co-defendants about the claim set.

No one has shown a timely insurance or reinsurance payment made to purchase the subject Law Access branded claim set. The Secretary alleges in the Motion to Dismiss that PHEAA was paid for the claim set twice without supporting evidence or a date (not looking at such payments). The response to the Plaintiff's Freedom of Information Act request shows no reinsurance payment was made. State and federal records and reports do not match. The co-defendants will not discuss the consolidation check PHEAA disclosed. Without bank records, the co-defendants' reports deny the claim set is a Law Access claim set. The Plaintiff's complaints about the claim set began in February 1995 with a follow-up audit request in writing in October 1995 and ever since because of conflicting reports. The Plaintiff wants cessation of collection, full damages awarded including wasted time and punitive, and the historical records corrected to stop computer overrides. The Plaintiff has now added an update to the federally garnished amount previously reported. The Department of Education reported that PHEAA garnished $1,519.17. The Plaintiff's 2016 tax

2

refund of $1,747.45 was intercepted and sent to the Department of Education. The statements below follow the evidence the co-defendants were willing to disclose.

III.     Questions Presented by the Secretary's Motion to Dismiss

     A.     Under federal and North Carolina state law, is the Secretary acting within the scope of his employment, while requesting a dismissal based on an allegedly private financial product and an allegedly bogus check, and while continuing to collect on the subject claim set?

     B.     Does the Plaintiff have the right to claim the protection of the laws after an injury as a civil liberty for subject matter jurisdiction over the Secretary?

     C.     Has the Plaintiff sufficiently stated a claim upon which relief may be granted against the Secretary?

IV.     Argument

     A.  Summary of Argument

The Plaintiff's claims are not barred by sovereign immunity. The co-defendants do not have sovereign immunity for a Law Access claim. The relevant waivers of sovereign immunity for fraud apply, as set forth in the Higher Education Act (hereinafter the "HEA"), the Administrative Procedure Act (hereinafter the "APA"), the Federal Tort Claims Act (hereinafter the "FTCA"), and the Tucker Act. The HEA statute of limitations for assignments and purchasing the claim set applies. Using Check 150385 as a basis for sovereign immunity to obtain a dismissal is illegal activity because of the check's bogus condition.

     B.  Motion To Dismiss Standard

The Secretary has filed a motion under Fed. R. Civ. P. 12(b)(1) alleging lack of subject matter jurisdiction. The moving party should prevail only if the material jurisdictional facts are

3

not in dispute and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The Secretary's Motion to Dismiss under Fed. R. Civ. P. Rule 12(b)(6) should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957); see *also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996); and *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007). For fraud claims, Fed. R. Civ. P. Rule 9(b) requires the circumstances constituting fraud or mistake to be stated with particularity. *Graham v. Anderson*, No. 5: 23-CV-30-D (D.N.C. June 8, 2023). The Plaintiff only needs to set forth the particular facts of the fraud, which at this stage must be accepted as true.

A court must accept all factual allegations set forth in the Complaint as true. *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court must consider the complaint in its entirety; "the inquiry…is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Id.* Finally, the court must conduct a comparative inquiry: "[a] complaint will survive if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. The facts as alleged by the Plaintiff more than adequately survive such a comparison.

The Plaintiff's Complaint particularly states facts that support each element of the Plaintiff's claims and thus withstands the Secretary's Motion to Dismiss. The Plaintiff has set forth detailed allegations that fulfill each and every pleading requirement under Rule 9(b) as suggested by the Seventh Circuit, answering the "who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

4

C. This Court Has Subject Matter Jurisdiction Because the Secretary's Claim of Sovereign Immunity Falls within the Exceptions to Sovereign Immunity Protection

Sovereign immunity requires a governmental function for the benefit of the public at large. *Britt v. City of Wilmington*, 236 N.C. 446, 450 (1952). Four bases for waiver of sovereign immunity include the HEA (Count II), the APA (Count IX), the FTCA, and the Tucker Act because of public fund tracking. All waivers apply to the subject claims set. Plaintiff alleges herein specific violations that bar the doctrine of sovereign immunity. *Lewis v. United States*, 2023 U.S. Dist. LEXIS 33990. The FTCA does not apply to private claims being administered by a federal agency. The Department of Education had no authority to send the missing FTCA notice. *See* Exh. K (Hearing Notice) attached to the Complaint. The word "final" was not used in the Hearing Notice. The Hearing Notice was not sent via certified or registered mail. *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); and *McNeil v. United States*, 508 U.S. 106, 112, 113 (1993). The hearing was not in-person. *See* Exh. AAA (promise for in-person hearing and request) attached hereto.

Formal adjudications are proceedings that, under statute, must be conducted in accordance with the formal hearing provisions of the Administrative Procedure Act (APA) contained in 5 U.S.C. §§ 554, 556, and 557. The APA "applies to all agencies and is not administered by any one in particular," therefore "deference to the interpretation by any particular agency is inappropriate." *Ardestani v. U.S. Dept. of Justice, I.N.S.*, 904 F.2d 1505 (11th Cir. 1990). This claim set was never insured. FTCA immunity should not be applied.

The requirement to allege a waiver of governmental immunity "does not...mandate that a complaint use any particular language. Instead, consistent with the concept of notice pleading, a complaint need only allege facts that, if taken as true, are sufficient to establish a waiver...[of]

5

immunity." *Fabrikant v. Carrituck Cnty.*, 174 N.C. App. 30, 38 (2005). Omission of the term "waiver" in the complaint does not justify dismissal. The Plaintiff seeks to ascertain the rights of the co-defendants and relief from them exceeding their statutory authority to take the Plaintiff's property while being forced into a hearing gaslit. *T and A Amusements, LLC v. McCrory*, 796 S.E.2d 376, 251 N.C. App. 904 (Ct. App. 2017).

The Secretary's argument in the Motion to Dismiss is that immunity keeps the federal and state student loan program administrators from having to have a correct historical record, timely purchases and assignments, bank records, a money trail, and secure databases. 34 C.F.R. 682.208(h). *See* Compl. ¶ 220 (45-day Notices required). The Secretary can use a bogus check to obtain a dismissal through immunity. The employees and affiliates can print their own money, even if the affiliates have no contract with the Department of Education. The employees and affiliates can conceal whatever they wish for as long as they wish. No court can touch them even if they are committing an illegal wrong. Even if they are relying on a bogus check to hold a hearing and won't allow a consumer to challenge them, they are immune from being held accountable.

The hearing requirements do not have to be followed. The employees and affiliates do not have to provide accurate reports to the President of the United States or true information to courts. They may destroy documents at their leisure. They can prevent banks from being able to prove a negative by printing their own money. They can avoid missing records reports. They can purchase private claims with no questions asked. They can purchase claims made by dead and unregistered banks. They do not have to police guarantors if they do not feel like it. They do not have to use public funds for public interest authority to gain sovereign immunity. They can make the historical record say whatever they wish and change it as many times as they wish. They can avoid talking to a bank and report without bank and trust records and honored checks that show a disbursement.

6

They have a totalitarian level of authority because they do not have to prove their claim when they order a garnishment or tax refund interception.

The Secretary can purchase the claim as many times as the Department of Education wishes without showing what debit they are crediting. They can collect on private claims and on federal claims, even without purchasing the claim or being able to certify the claim. In this case, even though no loan was made using consolidation Check 150385, no questions may be asked, and no proof of claim must be filed for challenge. They can use a bogus check to establish a statute of limitations for a loan that was never made, carrying on disinformation for all time in mismatched federal and state government historical records. The Secretary can falsify being an owner to claim sovereign immunity without any accountability. The employees and affiliates do not have to be transparent. The Secretary can act unconscionably by using the consolidation check to obtain a dismissal.

Ultimately, what is clear is that the Secretary, the employees and affiliates do not want a good student loan program and see no public policy requiring one. Private Check 150385 could not be used to establish sovereign immunity since its existence is against the law and public policy. Law Access loans are not federal government work, either. In the Motion to Dismiss, the Secretary has not alleged any facts regarding whether he has been acting as the Secretary to administer the subject Law Access loan claim set, which remains an ongoing collection effort. *Carroll v. Trump*, No. 20-3977-cv (L) (2d Cir. Apr. 21, 2023) and *McKenzie v. Charlton*, 822 S.E.2d 159, 262 N.C. App. 410 (Ct. App. 2018). The Hearing Decision Notice advised the Plaintiff that she had the right to bring "a lawsuit in federal district court", not that there was immunity from suit in federal court. *See* Exh. K, Page Doretha B Perkins000082 attached to the Complaint.

7

Under 20 U.S.C. §1082(a)(6), the Secretary's authority only covers "any claim on, or arising because of, any such insurance or any guaranty agreement" under the FFELP. Congress enumerated general powers of the Secretary under Title IV, including to sue. The Secretary can also be sued (no sovereign immunity) in federal court. 20 U.S.C. § 1082(a). The Secretary openly relies on these authorities in carrying out activities (administering) under other Title IV programs, but not the private Law Access Program. The co-defendants have knowingly been acting beyond their scope of authority and using a bogus consolidation check to do so. *See United States v. Durham*, 319 F.2d 590 (4th Cir. 1963) ("bogus check" was a false pretense); *United States v. Boone*, 470 F.2d 908 (4th Cir. 1972) (cashed seven "bogus checks"); and *Malone v. Topsail Area Jaycees, Inc.*, 439 S.E.2d 192, 113 N.C. App. 498 (Ct. App. 1994) (signed large contest check was not a simulated check). *See also*, Compl. ¶¶ 792-801 (Count XIX, Simulated Checks); and Exhs. A and B (incomplete set of checks) and Exh. T (Check Fraud Scheme missing parts) attached to the Complaint.

In accordance with public policy, the federal student loan product is supposed to be safe enough for an 18-year-old to understand the financial product and obtain such a product without having to hire an attorney for advice to manage the debt and debt owners. *See* Compl. ¶¶ 103, 459(g) (Count III), 800(e) (Count XIX) (Law Access branding denials); and *see* Exh. Y (branding denials) attached to Complaint, Pages Doretha B Perkins000514-Doretha B Perkins000527; and Exh. Z attached hereto, Rows 106, 110 and 367 of the Loan Certification Department's transcript with branding denials, Pages Doretha B Perkins000535-Doretha B Perkins000556. Contracts that violate public policy are unenforceable. *In Re Craytor*, No. 20-12098-ABA (Bankr. D.N.J. Feb. 22, 2023). A claim set based on unsigned consolidation Check 150385 violates public policy and is unenforceable.

8

After the bankruptcy court decision in the In Re Perkins litigation[1], the co-defendants have refused to file a proof of claim for challenge, leaving the Administrative Wage Garnishment (AWG) and unsigned Hearing Notice to replace any independent review, including a Comptroller's oversight, which is against public policy that supports having an AWG. *In re James F. Humphreys & Assocs., L.C.*, 547 B.R. 190 (Bankr. S.D.W. Va. 2016) (proof of claim). *See* Exh. AA (failed promise of Comptroller oversight and check writing in PHEAA's Handbook for Legislators), Page Doretha B Perkins000557- Doretha B Perkins000560 attached hereto.

The responses to the Plaintiff's 2015 Freedom of Information Act requests and the bankruptcy court Order in the In Re Perkins case compelling the historical records showed the co-defendants narrowed their scope of review for each of their audit reports when asked for an accounting. Injunctive relief is due to the Plaintiff to stop collection based on Check 150385 with no known claim purchase. *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). *See* Exh. BB (Response to FOIA request reporting no reinsurance payment), Page Doretha B Perkins000561 attached hereto and Exh. C (court Order compelling records) attached to the Complaint. No timely insurance or reinsurance payments have been disclosed or confirmed, which would determine the chain of ownership, chain of custody and durations of ownership for sovereign immunity. *See* Exh. U (table of conflicting insurance payment reports), Pages Doretha B Perkins000349-Doretha B Perkins000350; and Exh. V (table of conflicting reinsurance payment reports), Pages Doretha B Perkins000404-Doretha B Perkins000406 attached to the Complaint. Missing merger notices put the ownership trail in a deliberate blind spot.

RICO may not have expressly waived sovereign immunity; however, the Department of Education has no evidence of ownership, so sovereign immunity from public interest authority

---

[1] https://www.ncmb.uscourts.gov/content/re-perkins-case-no-03-80777-ap-no-03-9075

does not apply. *Hoffmeister v. United Student Aid Funds, Inc.*, 818 F. App'x 802, 807 (10th Cir. 2020); and *see United States v. Powell*, 680 F.3d 350 (4th Cir. 2012) (evidence of ownership). Debts the Department of Education collects must be their own for immunity. *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007). Check 150385 prevents the Department of Education from owning the claim set using public funds. The question of whether a right is clearly established is a question of law for the court to decide. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Scope of review manipulation made the Department of Education complicit on November 29, 2005 at 11:05 am through the Department of Education's email transmission constituting wire fraud. The co-defendants became united in their interests in the claim set because of PHEAA's racketeering in 2001 involving the NSLD. The Department of Education did not police the NSLD, which was compromised shortly after its inception by PHEAA adding the present claim set to the database. Nevertheless, the Department of Education conspired to join PHEAA to collect on the subject claim set by using a pattern of narrowing the scope of review so that the Department of Education's audit reports lined up with PHEAA's while the data and documents did not. *See* Exh. CC (2005 email from the Department of Education's Legal Department claiming a reinsurance payment in 2001 prior to the 2003 *bankruptcy* case), Page Doretha B Perkins000562); and Exh. GG (Scope of Review Scheme) attached hereto. The Department of Education stated their policy is to stay the course once a decision about a claim is made. The Department of Education never certified the claim set. *See* Exh. F (Default Resolution Group's audit response) attached to the Complaint.

10

This court has subject matter jurisdiction because the government had no right to a judgment or choice or directive regarding Law Access loans. *Hawes v. United States*, 409 F.3d 213, 215 (4th Cir. 2005). Administration of a private student loan program is against public policy for the Department of Education and so not within the scope of employment. As discussed above, the auditors argue the claim set is not a Law Access claim set, despite the branding on numerous unauthorized Law Access forms. *See* Exh. EE (Law Access branding on Law Access forms), Page Doretha B Perkins000593 attached hereto.

Like the auditors, courts must check for the eligible Lender Identification Numbers given to bank registrants, just as consumers' Social Security Numbers are required and get checked. The federal Lender Identification Numbers appear on Office of Management and Budget (OMB) common forms but no place for such numbers were created for PHEAA's unauthorized Law Access forms until 1994, and so are missing requirements in the claim set. *In Re EpiPEN Direct Purchaser Litigation*, File No. 20-cv-0827 (ECT/TNL) (D. Minn. Jan. 15, 2021) (broker-dealer registration requirement). See Compl. ¶ 205 (place for number added); *see also* Exh. CC (1994 application/promissory note with place for number added) attached hereto; Exh. DD (1994 Disclosure Statement with a different number than the application/promissory note); and Exh. P (Application Fraud Scheme with 1994 application/promissory note diagramed), Page Doretha B Perkins000191 attached to the Complaint.

Identification theft prevented an authorized insurance or reinsurance payment (swapped in 1994—compare LID in Exh. S, Page Doretha B Perkins000273 to LID in Exh. CC). Importantly, PHEAA used other banks' federal Lender Identification Numbers on the Disclosure Statements for the claim set. *See* Compl. ¶¶ 112 and 182 (identification number theft); Exh. S (ID theft illustrated in Disclosure Statement Fraud Scheme, Pages Doretha B Perkins000264-Doretha B

11

Perkins000275 attached to the Complaint; Exh. MM (federal lender identification numbers) attached hereto; and Exh. DD (full set of Disclosure Statements from PHEAA's 2014 Bowman Report) attached hereto. The co-defendants never provided federal identification numbers for the trusts named and never mentioned the trusts in their audit reports. *See* Compl. ¶¶ 89 and 93. *See* Compl. Footnote 23; and Appendix to Auditor Reports (map of the FFELP loan stages under the HEA and rebuffed laws); and Exh. PP (PHEAA's aliases; only one registered) attached hereto.

The Department of Education's website indicates their employees would be outside their scope of employment if they administer Law Access loans. Exh. FF (the Department of Education's web pages rejecting Law Access loans) attached hereto. An insurance or reinsurance payment or any other means of collecting on a Law Access loan by the co-defendants would be outside the scope of employment. *Smith v. Clinton*, 886 F.3d 122, 127 (D.C. Cir.), cert. denied, 139 S. Ct. 459, 202 L. Ed. 2d 362 (2018). "Once a taking is effected, no subsequent activity of the government extinguishes its obligation to pay for the period of deprivation." Also, "a taking, even for a day, without compensation is prohibited by the Constitution." Administering Law Access loans is not a valid government action authorized by Congress. A "Tucker Act suit does not lie for an executive taking not authorized by Congress, expressly or by implication." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993) citing *NBH Land Co. v. United States,* 576 F.2d 317, 319, 217 Ct.Cl. 41 (1978). So, a Tucker Act suit is allowed in this case.

The hearing in this case follows what has been observed nationwide regarding the Department of Education's hearings. It has been noted that in violation of the APA, student loan collection hearings offer no more than an illusion of due process. The Department outsources some key aspects of the hearing process largely to Maximus, the Department's current default services contractor. It is not clear who writes the final decisions. Despite extensive private

12

contractor involvement in administering hearings, it does not appear that Maximus or other private contractor employees serve as hearing officers for Department-held loans. Further, it is not clear who does. There are conflicts of interest inherent in the current structure of federal aid where the government is both the lender, school participation gatekeeper, and collector.[2] This approach to managing the Department of Educations' conflicts of interest prevents the wisdom of the Constitution and of statutes from ever being applied to student loans. *See* Deanne Loonin, *Illusory Due Process: The Broken Student Loan Hearing System*, 11 U.C. IRVINE L. REV. 173 (2020)[3]. Compl. ¶¶ 31, 103, 166, 240, 242, 257, 269, 279, 297, 348, 370, 479, 621, 665, 764 and 814 (secret hearing details); Exh. HH (Concealment Scheme, Timeline 2015); and Exh. GG (Scope of Review, Check Fraud Pattern: Concealment Orders), Pages Doretha B Perkins000733-Doretha B Perkins000736 attached hereto.

Collectively, the state and federal records in this case show methods the co-defendants are using to infectiously corrupt the court system and commit fraud, waste resources, and abuse:

Check 150385* is not a lawful check or instrument. *See* Sec. III of the Complaint, "Treatment of Checks and Copies"; Compl. ¶ 606 (Count VIII, check was tucked among affidavit's exhibits); Exh. WW (PHEAA's 2003 affidavit regarding Check 150385) attached hereto; and Exhibit A (Check 150385), Page Doretha B Perkins000003 attached to the Complaint. Check 150385 is equivalent in monetary value to the mock gameboard check in Exh. II (mock gameboard check) attached hereto. Unlike the contest check in *Malone v. Topsail Area Jaycees, Inc.*, 439 S.E.2d 192, 113 N.C. App. 498 (Ct. App. 1994), consolidation Check 150385 was not made out

---

[2] The Department of Education sells the loans, insures the loans, advises on student loan law, administers the loans, collects the loans, has no complaint department, takes money without judicial review, decides on the rights of their own product, hires the servicers, holds the hearings on their own financial product, keeps the historical records, controls the auditors, and polices themselves.

[3] Available at: https://scholarship.law.uci.edu/ucilr/vol11/iss1/8

to the Plaintiff or to the unidentified owners named on the 1995 consolidation application/promissory note by PHEAA. In violation of the terms of the 1995 consolidation application, an unidentified person illegally printed the claims chosen for consolidation on the 1995 application without a bank's or the Plaintiff's consent after pursuit activity. *See* Exh. YY (1995 pursuit data) attached hereto. No consent converted the application into a promissory note. *See* Exh. JJ (1995 consolidation application/promissory note) attached hereto; and Exh. R (1995 application/promissory note's missing required features), Page Doretha B Perkins000243 attached to the Complaint.

Consolidation Check 150385 was altered to add a drawer who did not exist. The check was made out to PHEAA'S unregistered alias "SLSC" who would not sign it and to a dead bank who could not sign it without employees. The co-defendants will not talk about the check. PHEAA's compliance counsel dodged the question about the check when asked. *See* Compl. ¶¶ 232, 276, 287, and 364 (disgruntled escalation to compliance counsel); Exh. EE attached hereto (Missing Documents Scheme with PHEAA's auditors escalating the Plaintiff's Abstract of Title audit request to PHEAA's compliance counsel) diagramed on Page Doretha B Perkins000591 and PHEAA's Clark, Bowman, and Saylor Reports with the Abstract of Title audit request on Pages Doretha B Perkins000579-Doretha B Perkins000596; Exh. AA (alias SLSC discussed in PHEAA's Handbook for Legislators), Page Doretha B Perkins000560 attached hereto; Exh. EE (compliance counsel Saylor's report with rebuffed Statement of Reinsurance Payment and Debt Verification detailed audit request), Page Doretha B Perkins000692 attached hereto; Exh. A (October 1995 audit request letter stamped by SLSC showing receipt), Page Doretha B Perkins000001 attached to the Complaint; and Exh. KK (Society National bank's death the year before the check date). The 1992-1993 checks that would have had dead Ameritrust's name are among the missing in the

incomplete set of checks. *See* Exh. B (incomplete set of checks) attached to the Complaint; and Exh. QQ (Law Access, Inc.'s successor denies check writing; born too late) attached hereto. PHEAA needed a specialized device to print unsigned Check 150385.

Society National bank was repeatedly identified by PHEAA's PO Box address and not by the bank's federal lender identification number (LID). PHEAA used their own PO Boxes for consumer communications with a bank, with nothing for trusts. *Historic E. Pequots v. Salazar*, 934 F.Supp.2d 272, 281–82 (D.D.C.2013) (parties must properly identify themselves in accordance with regulations). *See* Exh. UU (2014 PO Box identification audit request) attached hereto. Consolidation check drawer Law/Ameritrust has no identity or federal registration number disclosed. Federal student loan checks may not be representational like Exh. II (a mock check) attached hereto. They must be honored by a bank to demonstrate a disbursement. The check has no bank account number that points to a property. The check could not be put through a bank's lockbox machine without cutting it with scissors. Four missing authorized signatures are required. No authorized signatories have been disclosed. The check is linked to a Loan Verification Certificate with an unauthorized stamped signature. *Joy v. Merscorp, Inc.*, 935 F. Supp. 2d 848 (D.N.C. 2013) (stamped signature). *See* Exh. BBB (undated Loan Verification Certificate) attached hereto. PHEAA and the Department of Education never had a Law Access; Law Access, Inc.; Law/Ameritrust; or Ameritrust Bank federal student loan contract. They could not have contracted together with the Plaintiff and the banks and their trusts who have no record. The consolidation check is not based on a contract with the Department of Education. *See* Exh. LL (Loan Certification Department's 2004 rejection); and Exh. MM (missing Ameritrust federal identification number) attached hereto.

Check 150385 does not point to public property. The co-defendants can open an account without a debit and will not disclose what public debit they are crediting. The co-defendants conceal who printed Check 150385 on a dot matrix assembly. There are no related bank records or merger records. PHEAA left accounts open from 1995-1996 and then recorded a January 31, 1997 "paid in full" date for each claim in the NSLD. Exh. VV (accounts left open) attached hereto. The printing on Check 150385 does not account for the cancellation in the National Student Loan Database or the 1996 refund checks. *See* Exh. NN (refund check forwarding letters (checks sent back to PHEAA as instructed)) attached hereto; and Exh. OO (NSLD cancellation), Page Doretha B. Perkins000893 attached hereto. Check 150385 is related to an incomplete set of PHEAA's unsigned checks. *See* Exh. B (unsigned Law Access checks) attached to the Complaint.

No eligible lender selected PHEAA as guarantor or servicer for the claim set. So, PHEAA had no right to write a consolidation check or to pay insurance. *See* Compl. ¶ 374 (self-proclaimed servicer activity); Compl. ¶ 560 (Count VII, PHEAA had no bank records while naming dead banks as actors); Compl. ¶ 632 (Count X, loan servicer added without bank consent). The Department of Education had no authority to pay a self-proclaimed servicer and guarantor. Check writer Law Access remains unidentified. Dot matrix printing altered the purpose of the unauthenticated Law Access checks.

Public funds had to be spent at least eight times and tracked to support the Department of Education's immunity, if based on a reinsurance payment. Public funds had to be forgiven at least once for the cancellation in the NSLD. The money trail is missing, including honored checks with the Plaintiff's authorizing signature. No insurance payment request from a bank or trust exists to show public funds were requested and spent repeatedly, as necessary. The condition of the checks does not allow for a money trail inference. *See* Compl. ¶¶ 544 (Count VII), 585 (Count VIII), 637

16

(Count X), 665 (Count XI), 680 (Count XII), 717 (Count XIV), and 765 (Count XVI) (missing money trail); and *see* Exh. RR (Missing Money Scheme includes fees and subsidies) attached hereto.

Nine loans are listed on the 1995 consolidation application/promissory note--some combined, some separately. *See* Transcript under Exh. SS (Wrong Number of Claims, Transcript Row 102 (where the PHEAA's witness David Clark reports that nine (9) loans were consolidated), Page Doretha B Perkins000826 attached hereto. Each claim to be consolidated was to be listed separately along with the interest rate, the owner, and the date of the disbursement. The claim count did not match the seven unconsolidated Disclosure Statements. No bank or trust was consulted for any payoff amounts. *See* Exh. DD (Disclosure Statements) attached hereto. A 1995 claim variance letter and a cancellation in the National Student Loan Database revealed in 2005 showed no consent and no bank and trust signatory. See Compl. ¶¶ 147, 149, 155, 636, 840, 872 (wrong number of claims); *see also* Exh. TT (1995 claim variance letter) attached hereto; and Exh. V (Payoff Quote Scheme claim variance letter excerpt), Page Doretha B Perkins000378 attached to the Complaint. "Title IV of the HEA directs the Secretary of the Department of Education to implement various federal student financial aid programs." *De La Mota v. U.S. Dep't of Educ.,* 2003 WL 21919774, at *4 (S.D.N.Y. Aug. 12, 2003), *rev'd on other grounds* 412 F.3d 71 (2d Cir. 2005). Law Access programs are not federal student aid programs. So, a cancellation in the NSLD must be authorized under a federal student loan program and tracked transparently. *See* Exh. OO (NSLD) and Exh. BBB (Loan Verification Certificate with six claims) attached hereto; and Exh. A (consolidation check) attached to the Complaint.

The 1995 consolidation "check" is not a common form for banks. No Office of Management and Budget (OMB) common forms were used for the Law Access claim set, either.

17

HEA Sec. 432(m)(1) "Common Forms and Formats" (form must require applicant to clearly indicate choice of lender; the forms are subject to the Uniform Commercial Code); 34 CFR §682.401(c) (must use common forms); and 34 CFR 682.401(c)(1) (OMB data from common forms is needed for audit responses to other agencies). *See* Compl. ¶¶ 41; 49; 59; 61; 113; 115; 116; 195; 196; 239(r)(ii); 300; 343; 376; 377; 378; 400; 401; 449 (Count IV (469, 471-472); 691(a); 735-737 (Count XV, forms required); 739; 798-800 (Count XIX); 821(d); 843; and 849(a) (missing requirements because PHEAA rebuffed common forms); 835 (Count XXI, identification number theft enabled); 840 and 847 (Count XXI, wrong number of claims pre-printed). PHEAA's Law Access forms do not include an assignment. *See* Compl. Sec. III, Treatment of Checks and Copies (refusals to make copies of certain instruments); Compl. ¶¶ 161, 385, 592, and 821 (failure to copy and keep); and *see* also Exh. EE (Law Access branding on Law Access forms), Page Doretha B Perkins000593 attached hereto; Exhs. P, R, S, T, V, and Y (incomplete forms and copying schemes) attached to the Complaint; Exh. NN (refund forwarding letters not copied for the historical record) attached hereto; and Exh. A (1996 "paid in full" stamp not copied for the historical record) attached to the Complaint.

The Motion to Dismiss states two reinsurance payments were made--sometime in 2001 and sometime in 2008. PHEAA attempted to sell the Law Access claim in 2004 also. *See* Exh. LL (Loan Certification Department's 2004 rejection); and Exh. OO (NSLD reinsurance data), Pages Doretha B Perkins000891 and Doretha B Perkins000894 attached hereto.

No court ever provided a disbursement date for the consolidation claim for hearing rights. *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999). With no bank records, PHEAA created four consolidation completion dates (blind spots): (1) April 20, 1995; (2) May 3, 1995; (3) March 21, 1996; and (4) January 31, 1997. *See* Compl. ¶ 691(t) (the

four completion dates); and Exh. A (NSLD record of 4/20/1995 trust ownership start date), Page Doretha B Perkins000002; (unsigned Check 150385 dated May 3, 1995), Page Doretha B Perkins000003; (cover letter and promissory note with "Paid in Full" stamped in red with 3/21/1996 handwritten), Pages Doretha B Perkins000004-Doretha B Perkins000006; and (January 31, 1997 "PAID IN FULL" date in the National Student Loan Database), Pages Doretha B Perkins000007-Doretha B Perkins000013 attached hereto. *But see* Exh. S (Disclosure Statement Fraud Scheme with a list of 15 things out of place on the 1995 Disclosure Statement), Page Doretha B Perkins000275 attached to the Complaint.

The use of Check 150385 is ongoing. The collection on this private claim is open-ended. *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir.), *cert. denied*, 558 U.S. 878 (2009). Exh. ZZ (December 2022 collection email indicating collection pause applies to the claim set) attached hereto. The co-defendants have used the checks as currency/U.S. legal tender repeatedly to falsely report assignments, insurance, reinsurance, brand, default (two listed, none declared), for a dismissal of this case, for one note marked paid in full, and for immunity. The Motion to Dismiss also uses Check 150385 to establish a statute of limitations to overcome waiver of sovereign immunity to obtain a dismissal of a claim they do not own. *Historic E. Pequots v. Salazar*, 934 F. Supp. 2d 272, 278 (D.D.C. 2013). The Department of Education never lawfully purchased this Law Access branded claim on time, even if twice done. No Law Access claim can trigger immunity based on public interest authority.

The Department of Education's actions are either takings or illegal exactions, since the Department of Education became complicit with PHEAA's 21 invalid and unauthorized fraud schemes. *Wagstaff v. US*, No. 11-466C (Fed. Cl. July 31, 2013). Every time the co-defendants used the virgin checks, they started a new cause of action for "illegal exaction", if not a taking.

19

*Holbrook v. TVA*, 48 F.4th 282 (2002) and *Electrical Welfare Trust Fund v. US*, 907 F.3d 165 (4th Cir. 2018). The Plaintiff is suing for damages for each restart. Using the check for the Motion to Dismiss is another indifferent restart and does not involve a subordinate's conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). *See* Exh. BB (Response to FOIA request reporting no reinsurance payment), Page Doretha B Perkins000561) and Exh. XX (Affidavit of Daniel Atcheson reporting $24,281.000 garnished by the Department of Education starting October 23, 2014, and ending April 3, 2020) attached hereto.

V.   CONCLUSION

Based on the foregoing grounds, the Plaintiff respectfully requests that this Court formally remove the entire set of unsigned Law Access checks in this case out of circulation and find subject matter jurisdiction over Defendant Dr. Miguel Cardona, in his official capacity as the Secretary of the United States Department of Education based on the claims asserted against him in the Complaint.

Respectfully submitted this 21st day of June, 2023.

Doretha B. Perkins, *pro se*
623 Southpoint Crossing Drive
Durham, North Carolina 27713

20

CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, the foregoing PLAINTIFF'S RESPONSE TO THE BRIEF

IN SUPPORT OF DEFENDANT DR. MIGUEL CARDONA'S MOTION TO DISMISS was sent

by depositing the same in the United States Mail addressed to the United States District Court;

Defendant Dr. Miguel Cardona, Secretary of the U.S. Department of Education; and counsel for

Defendant Pennsylvania Higher Education Assistance Agency as follows:


D. Kyle Deak
Troutman Pepper Hamilton Sanders LLP
305 Church at North Hills Street, Suite 1200
Raleigh, NC 27609

Sandra J. Hairston
United States Attorney
Nathan L. Strup
Assistant U.S. Attorney
Middle District of North Carolina
101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401

Doretha B. Perkins, *Pro Se*
623 Southpoint Crossing Drive
Durham, North Carolina 27713

DECLARATION OF DORETHA B. PERKINS PURSUANT TO PLAINTIFF'S RESPONSE
TO DEFENDANT DR. MIGUEL CARDONA'S MOTION TO DISMISS

I, Doretha B. Perkins, declare that the following account of events is true and correct to the best of my knowledge.

1. I am 63 years old, currently reside at 623 Southpoint Crossing Drive, Durham, North Carolina 27713 and hereby declare to the following facts under penalty of perjury.

2. I make this affidavit in support of Plaintiff's Response to Defendant Dr. Miguel Cardona's Motion to Dismiss.

3. Specifically, as set forth below, I have compiled a set of illustrations, document excerpts, reports and full documents prepared by auditors and reporters, along with the co-defendants' disclosed records for the subject Law Access loan claim set that demonstrate how the Defendants conspired to provide conflicting and willfully false reports to further support the Complaint filed on September 12, 2022 (Dkt. No. 3).

4. The illustrations, document excerpts, reports, map of the Higher Education Act for making a Federal Family Education Loan, and full documents demonstrate that the co-defendants used bogus consolidation Check 150385 to pretend a consolidation loan was made and purchased by them from eligible lender banks and trusts within the period of the statute of limitations for federal student loans under the Federal Family Education Loan Program.

5. The facts set forth in this affidavit come from my personal involvement with the subject Law Access loan claim set; interviews with witnesses who audited the claim set; witnesses who reviewed some of the claim set's documents; state and federal reports regarding the claim set; documents disclosed over the Internet directly related to the claim set such as bank federal

-1-

identification number lists; e-mails regarding the claim set; letters regarding the claim set; court documents regarding audit of the claim set; telephone records regarding the claim set; the Defendants' training letters and manuals; materials obtained through additional agencies who attempted to assist with addressing violations related to the claim set; Freedom of Information Act Request responses regarding the claim set; and information provided by consumer protection and law enforcement agencies who attempted to assist with audit of the claim set that had no federally approved forms.

6. In submitting this affidavit, I have not included each and every fact known to me about this Law Access loan claim set. Rather, I have included only those facts that I believe are sufficient to establish fraud and the intention to commit fraud, as well as evidence that fits each and every element of the 22 Counts in the Complaint.

7. Since 1991, I have been unable to identify the parties named by PHEAA and PHEAA's aliases.

8. The co-defendants have never contacted a bank or trust about PHEAA's Law Access claims to respond to an audit request. No bank or trust declared a default or contacted me to collect or claim ownership. I have never seen any bank records or trust records that support the claim set. No public funds have been spent on the claim set.

9. PHEAA and the Department of Education will not disclose and correct any contradictory parts of the federal historical record for public view. PHEAA and the Department of Education will not clean up and correct their historical records to make them accurate, pristine, clear and reliable.

10. All of my attempts to follow a money trail have been met with runaround and blind spots.

I certify under penalty of perjury under the laws of the state of North Carolina that the foregoing is true and correct and would be my testimony if I were in a court of law.  I have attached Exhibits Z to BBB hereto.

June 21, 2023
Date

Doretha B. Perkins, *Pro Se*